**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PEARSON EDUCATION, INC.<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDER NADOLINSKI and NADLAB, LLC<br><br>Defendants. | Civil Action No.<br>Related to Case 1:16-cv-11523<br><br>**COMPLAINT AND JURY TRIAL DEMAND** |

In support of its claims against Defendants Alexander Nadolinski and NadLab, LLC (collectively, "Defendants"), Plaintiff Pearson Education, Inc. ("Plaintiff" or "Pearson"), by and through its undersigned attorneys, avers the following, all upon its most recent knowledge, information, and reasonable belief:

## <u>NATURE OF THE ACTION</u>

1. This is a case involving egregious violations of the federal laws concerning copyright and trademark infringement.[1] Plaintiff is a leading educational publisher who develops, markets, distributes, licenses, and sells a comprehensive range of traditional and digital educational content and tools to professionals and students of all ages. Plaintiff's textbooks are among the most popular and widely used titles in their fields.

2. Plaintiff offers educators the ability to create customized course materials through Pearson's automated custom publishing site, the Pearson Custom Library (the "PCL")

[1] This case arises out of the same set of facts and circumstances as another, related case recently filed in this District and captioned, *R.R. Donnelley & Sons Co. v. Nadolinski*, No. 1:16-cv-11523.

(http://www.pearsoncustomlibrary.com/). Beginning in January 2009, Plaintiff contracted with Highcrest Media, LLC ("Highcrest") to create and maintain the PCL using its proprietary Custom Publishing Platform (also the "Platform").[2] Under Plaintiff's services agreement with Courier, Plaintiff uploads its valuable educational materials in digital format to the PCL. The PCL allows professors, instructors, and other individuals to create textbooks specifically tailored to the particular needs of a class or group of students.

3. Plaintiff recently discovered that Alexander Nadolinski, a former employee of Courier, copied without permission or right nearly 300,000 digital files, which contained thousands of Pearson's copyrighted textbooks and Courier's highly confidential and proprietary platform data, among other things.

4. Defendants copied and are using Plaintiff's copyrighted textbooks and the PCL code and interface to develop, demonstrate, distribute, and offer for sale publishing software to third parties, including Plaintiff's competitors. Defendants created multiple platforms and test websites for custom publishing, including the "Publish With Us" (publishwithus.com) and "Textfuser" (textfuser.com) websites. Defendants also created the "PragmaticBook" (pragmaticbook.net) website, a Russian-language version of their platform. These publishing platforms are clearly copies of the PCL. In addition to copying the PCL and Plaintiff's copyrighted textbooks, Defendants also copied and used Plaintiff's registered trademarks on their competing publishing platforms for Defendants' own commercial gain.

5. Defendants' actions complained of herein were undertaken knowingly, willfully, and maliciously for the purpose of growing Nadolinski and NadLab, LLC's business, and

[2] Highcrest was acquired by Courier New Media, Inc. Courier's parent company was acquired by R.R. Donnelley & Sons, Company ("RRD") in June 2015. Accordingly, Courier is a wholly-owned subsidiary of RRD. For the sake of ease, RRD, Highcrest, and Courier are referred to herein collectively as "Courier."

profiting from the unlawful scheme.

6. Defendants' infringing conduct has caused and continues to cause Plaintiff great financial harm and immediate irreparable injury, ongoing and threatened loss of business and customers, and loss of goodwill and reputation. Therefore, Plaintiff seeks preliminary and permanent injunctive relief, declaratory relief, actual or statutory damages at Plaintiff's election, and enhanced damages against Defendants.

**JURISDICTION AND VENUE**

7. This is an action arising under the Copyright Act, 17 U.S.C. § 101 *et al.* and the Lanham Act §§ 32, 43, 15 U.S.C. §§ 1114, 1125.

8. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has personal jurisdiction over Defendants, which reside or have a place of business in this District, and have significant contacts with and do business in this District.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside or may be found in this District, a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred within this district, and significant witnesses, documents, and other evidence are located within this district. Venue is also proper in this district pursuant to 28 U.S.C. § 1400(a) because Defendants reside or may be found in this District.

**THE PARTIES**

11. Plaintiff Pearson Education, Inc., is a Delaware corporation with its principal place of business located at 330 Hudson Street, New York, New York 10013.

12. Defendant Alexander Nadolinski is an individual residing at 12 Wendell St. #17

Cambridge, Massachusetts 02138. He is the founder and General Manager of NadLab, LLC.

13. Defendant NadLab, LLC ("NadLab") is a limited liability company organized under the laws of the State of Delaware, having its principal place of business at 800 St. Mary's Street, Suite 34, Raleigh, North Carolina 27605 and additional offices at 30 Newbury Street, 3rd Floor, Boston, Massachusetts 02116.

**PLAINTIFF'S BUSINESS, COPYRIGHTS, AND TRADEMARKS**

14. Plaintiff is a world-renowned publisher of educational books and multimedia materials in all subject areas and grade levels, operating under numerous imprints, with a rich educational and literary heritage. With well-known brands such as Pearson, Prentice Hall, Pearson Longman, Pearson Scott Foresman, Pearson Addison Wesley, Pearson NCS, and many others, Plaintiff provides quality content, assessment tools, and educational services in all available media. Plaintiff's publications include physical and digital textbooks, which are widely available in the marketplace for sale, rental, or subscription.

15. Plaintiff is the copyright owner of, and/or the owner of the exclusive rights under copyright in, *inter alia*, those works described on **Exhibit A** (hereinafter, Plaintiff's "Authentic Works"). Plaintiff or its affiliates have obtained registrations duly issued by the U.S. Copyright Office protecting its copyrights in Plaintiff's Authentic Works. Exhibit A identifies just a small sample of Plaintiff's many copyrighted works that Defendants are infringing. After Plaintiff has obtained discovery, Plaintiff will amend and add to the Authentic Works on Exhibit A.

16. Plaintiff's Authentic Works and the PCL bear trademarks and service marks set forth on **Exhibit B** (hereinafter, Plaintiff's "Marks"), which Plaintiff or its affiliates have duly registered on the Principal Registrar of the United States Patent and Trademark Office. Plaintiff owns or is the exclusive licensee of Plaintiff's Marks. Plaintiff's Marks are distinctive and arbitrary and in some cases are now incontestable under Section 15 of the Lanham Act, 15

U.S.C. § 1065. All of the registrations listed on Exhibit B are valid, subsisting, unrevoked and not cancelled. Plaintiff also owns common law rights in these and other trademarks.

**THE PEARSON CUSTOM LIBRARY**

17. Plaintiff makes its textbooks, including the Authentic Works, available through its automated custom publishing site, the PCL (http://www.pearsoncustomlibrary.com/). The PCL prominently displays Plaintiff's Marks on its public-facing interface. The PCL provides Plaintiff's customers the ability to create customized course materials and textbooks tailored to the particular needs of the individual educator, student, or course by quickly and easily assembling materials from disparate sources, which are then distributed in print or electronic format. Under its services agreement with Courier, Plaintiff provides its valuable educational materials in digital files to Courier on a strictly limited basis for the sole purpose of creating and maintaining the PCL. Courier is only permitted to use Plaintiff's content pursuant to the applicable services agreement.

18. Pearson uploads to the PCL digital files in portable document format (.pdf) at the chapter level, i.e., a single file for each chapter of each textbook. On average, there are roughly 15-20 .pdf files on the PCL for each of Pearson's textbooks. Since the inception of Pearson's contract with Highcrest in January 2009, Pearson has uploaded hundreds of thousands of chapters from its copyrighted textbooks to the PCL.

19. Accordingly, on the PCL, a user can choose, at the chapter level, specific content in any given subject from Pearson's catalogue of copyrighted textbooks that he or she would like to include in their own custom-created textbook or course material. A user can then decide in which order to compile the chapters, create a custom table of contents and cover, and generate a book tailored to the user's individual or classroom needs.

**DEFENDANTS AND THEIR UNLAWFUL CONDUCT**

20. Defendant Nadolinski is a former Courier employee. Nadolinski founded NadLab in 2006. According to its website, NadLab is "a software research and development company."

21. Nadolinski and NadLab were first hired by Highcrest in January 2008 as software development contractors to create and maintain a custom publishing and content management system. After Courier acquired Highcrest in 2010, Nadolinski and NadLab continued providing software services to Courier. In April 2013, Nadolinski became employed by Courier as its Technical Director.

22. In his position as Courier's Technical Director, Nadolinski's responsibilities included developing and overseeing the development of various software programs and platforms for Courier. In particular, Nadolinski and his NadLab team worked on the underlying source code for the Custom Publishing Platform, which Pearson licensed for purposes of creating and offering the PCL to its customers. As Technical Director, Nadolinski had access to the Platform's highly confidential server-side source code and database structure ("Platform Core Data"), as well as Pearson's copyrighted textbooks, including the Authentic Works, from which customers can generate custom books and course materials on the PCL.

23. In or about October 2013, while still employed at Courier, Nadolinski became a shareholder of Isaak Books, Inc. ("Isaak"). According to its Shareholders Agreement, Isaak offers, *inter alia*, "Digital Content," "Publishing/Authoring platforms," and "Publishing of Professor/Student books" to educational institutions. Defendants worked to develop software and software strategy for Isaak's customers and purported to transfer from NadLab to Isaak "digital applications (Intellectual Property) provided to educational markets and Isaak clients." Isaak is neither related, affiliated, nor licensed by Plaintiff.

24. On January 13, 2015, Nadolinski resigned his position at Courier. At that point,

per the terms of his employee confidentiality agreement, Nadolinski was under an obligation to return any and all confidential and proprietary information to Courier, as well as a continuing obligation not to use or disclose confidential and proprietary information. In addition, under the terms of Defendants' subcontractor and employment agreements, all right to intellectual property created or developed by Defendants in the course of their employment with Courier was owned by Courier.

25. Nonetheless, Nadolinski copied without permission or right nearly 300,000 digital files, which contained copies of thousands of Plaintiff's copyrighted textbooks. Over 288,000 of those digital files were .pdf documents uploaded by Plaintiff to Courier's Platform for the limited purpose of creating and maintaining the PCL pursuant to Plaintiff's agreement with Courier. The vast majority of the 288,000 digital files contain Plaintiff's copyrighted content ("Copyrighted Content").

26. Nadolinski has copied and been using Plaintiff's Copyrighted Content, including the Authentic Works, as well as the PCL interface and Courier's Platform Core Data, to develop, demonstrate, distribute, and offer for sale software products to third parties, including Courier's and Plaintiff's respective competitors, since at least as early as 2015.

**The Azure Account**

27. Beginning in or about January and February 2016, while he served as Isaak's shareholder and Chief Information Officer, Nadolinski copied and stored Plaintiff's Copyrighted Content on Isaak's cloud computing storage platform hosted by Microsoft Azure (the "Azure account"). The Copyrighted Content and other stolen files stored on the Azure account are estimated to comprise at least 1.7 terabytes of electronic data.

28. In or about February 2016, Isaak's CEO, Astrid Androsch, and Nadolinski began

planning a meeting with Plaintiff to discuss and demonstrate the "Publish With Us" custom publishing platform created by Defendants. Realizing that Plaintiff would recognize it as based on the PCL and Platform Core Data, Nadolinski insisted that the meeting be pushed back to accommodate further development of a second iteration of Publish with Us, "Textfuser," to demonstrate to Plaintiff instead.

29. On or about February 5, 2016, Nadolinski admitted to Ms. Androsch at Isaak that the reason he needed time before the meeting with Plaintiff was to obfuscate the identity of the website and prevent RRD, Courier's successor, from discovering his wrongful conduct: "need to do 2 things. . . . Modifications of C[ustom]P[ublishing] for Pearson. ***Otherwise RRD can sue and stop a lot of things***."

30. On or about March 30, 2016, Nadolinski abruptly quit his position at Isaak and reverted his shares to the company. Shortly thereafter, Isaak experienced repeated unauthorized access to its business accounts, including the Azure account. Isaak responded to this unauthorized access by freezing all access to its Azure account to prevent unauthorized attempts at remote access.

31. In or about May 2016, Isaak regained access to its Azure account and soon thereafter discovered the presence of at least 1.7 terabytes of data, which it later determined included Plaintiff's Copyrighted Content and Courier's highly confidential and proprietary business information relating to the PCL, stored there by Nadolinski. By way of example, among the electronic data on the Azure account is a storage space bearing the name "**pclmigratedhidden**,"[3] containing approximately 300,000 files. The file paths for files contained in the "pclmigratedhidden" container include, *inter alia*, "\PCLfiles_pearsonlabs",

[3] On information and belief, "pclmigratedhidden" is shorthand for "Pearson Custom Library Migrated Hidden."

"\PCLfiles_physicsandastronomy", and "\PCLfiles_politics", which correspond to various course disciplines on the PCL.

32. Within the "pclmigratedhidden" container are individual files bearing such names as "PearsonBookReader.zip"; "M04_PEAR6521_01_TE_U02_PCL.pdf"; and "M01_PEAR1350_01_SE_C01_PCL.pdf."

33. Plaintiff reviewed a spreadsheet containing the pclmigratedhidden file listing exported from the Azure account and discovered that over 288,000 of the files are unauthorized copies of content files uploaded by Plaintiff to the PCL. Based on the file characteristics identified in the spreadsheet, and further analysis as described below, Plaintiff determined that the vast majority of the 288,000 digital files contain portions of Plaintiff's copyrighted textbooks on the PCL. Based on a conservative estimate of 20 files per textbook, the pclmigratedhidden container stored well over 14,000 Pearson textbooks in their entirety.

34. Plaintiff reviewed a sample of the nearly 288,000 content files stored on the Azure account (the "Downloaded Files"). Plaintiff compared the Downloaded Files to the corresponding legitimate files containing the Authentic Works that Plaintiff uploaded to the PCL (the "Authentic Files").

35. Plaintiff's comparison showed that each of the Downloaded Files is identical to the corresponding Authentic Files. Specifically, in addition to having the same text, graphics, photos, and charts, each Downloaded File has the identical file name, file size, chapter name, subheadings, and source credit line[4] as the corresponding Authentic File. The Downloaded Files are identical to the Authentic Files even down to Pearson's unique method of modularizing its content for the PCL. This is yet another indication that the Azure account contains Defendants'

[4] Every file Pearson uploads to the PCL contains a line of text indicating the title of the textbook or other source from which the material contained in the digital file is derived.

infringing copies of not only the Authentic Works, but all of Plaintiff's Copyrighted Content on the PCL.

36. Defendants illegally copied Plaintiff's content while Nadolinski worked for Courier, but also continued to do so after Nadolinski left Courier. Long after he was authorized to access Courier's Platform and the PCL, Nadolinski copied new Pearson content from the PCL. While reviewing the pclmigratedhidden file listing, Plaintiff identified .pdf files, containing copyrighted textbooks that Plaintiff did not upload to the PCL until after Nadolinski resigned from Courier. For example, one of Plaintiff's Authentic Works, *Feminist Issues*, 6th edition, by Mandell, was not uploaded to the PCL until December 2015. This indicates that Defendants accessed the PCL and copied at least some of Plaintiff's copyrighted content *after* he resigned from Courier in January 2015.

**Defendants' Websites**

37. As mentioned above, Defendants' publishing platforms bear a striking resemblance to the PCL platform. Indeed, Defendants have copied the PCL in both format and content.

38. As of June 9, 2016, the "Publish With Us" website was not operational. However, the Textfuser website appeared fully operational and could be used to build a custom book. Likewise, Defendants' Russian-language website, PragmaticBook, appeared operational.

39. In the course of their investigation, Courier and Plaintiff's forensic consultant reviewed the Textfuser platform. Textfuser allows users to build a custom book by selecting from and downloading infringing copies of Plaintiff's Copyrighted Content. Textfuser also displays thumbnail images of Plaintiff's textbook covers bearing Plaintiff's Marks. Moreover, users can create or choose from sample covers displaying Plaintiff's Marks for the user's custom

book creation.

40. As with the Downloaded Files from the Azure account, Plaintiff compared files downloaded from Defendants' Textfuser website (the "Textfuser Files") with the corresponding Authentic Files from the PCL. Also, as with the Downloaded Files, each of the Textfuser Files contained the identical content as the corresponding Authentic Files. The content in the Textfuser Files also replicated the Authentic Files down to Pearson's unique method of modularizing its content for the PCL.

41. Defendants' PragmaticBook website is hosted on the same server as Textfuser. A certified translation of the PragmaticBook website's text as it appeared on June 8, 2016 shows that, like Textfuser, it provides users with the capability to build a custom book by selecting from and downloading Plaintiff's Copyrighted Content. The PragmaticBook website also displays thumbnail images of Plaintiff's textbook covers bearing Plaintiff's Marks. The Russian text as translated also mimics the content from the PCL page.

42. As of June 8, 2016, instead of displaying Plaintiff's Marks at the top of PragmaticBook's home page, as Plaintiff's Marks are displayed on the PCL, PragmaticBook identifies the page as the "User Library of the Ministry of Defense of the Russian Federation." The bottom of the webpage purports to provide notice of a 2016 copyright in the material by the Ministry of Defense of the Russian Federation. However, screenshots from the PragmaticBook website captured by the Internet Archive Wayback Machine show that it previously displayed Plaintiff's Marks as they appear on the PCL as well as Plaintiff's marketing copy in English.

43. Plaintiff's investigation also revealed that, in creating the Publish With Us, Textfuser, and PragmaticBook platforms, Defendants used Platform Core Data, as evidenced by the browser-side code, which contain references to, *inter alia*, the "Pearson Custom Business

Resources library" and "Pearson textbooks." As further evidence of the copying, the browser-side code to Defendants' websites even contains the exact same typographical errors that appear in the PCL code. In order to implement the Platform on their websites, Defendants would also need the server-side code to the PCL, containing Courier's highly confidential Platform Core Data and trade secrets.

**PEARSON'S HARM CAUSED BY DEFENDANTS' INFRINGEMENT**

44. Plaintiff suffers serious financial injury when its copyrights and trademarks are infringed.

45. Plaintiff invests heavily in textbook publishing. Each year it incurs substantial costs for author royalties or other costs of content creation or licensing, copyediting and proofreading, typesetting, layout, printing, binding, distribution, promotion, and support of its editorial offices.

46. Plaintiff has invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiff and its trademarks. Plaintiff invests significant resources annually in the worldwide advertisement and promotion of its goods and services under its marks. Plaintiff's Marks and the goodwill of the business associated with them in the United States and throughout the world are of tremendous value and have become associated in the public mind with textbooks of the very highest quality and reputation.

47. The revenue from Plaintiff's sales and rentals of textbooks represents a substantial portion of Plaintiff's annual revenues, and is therefore important to its financial health. Both publishers and authors alike are deprived of income when their textbooks are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.

48. Plaintiff does not make its digital textbook content available for general

distribution at the chapter level. Such general and uncontrolled distribution would contravene the way Pearson monetizes its valuable copyrighted content. Plaintiff simply does not provide digital files of its content and permit customer distribution without demanding and exerting over its service provider and the associated distribution platform. But now, as a result of Defendants' intentional wrongdoing, Plaintiff's Marks (and a vast amount of Plaintiff's Copyrighted Content) have been used, and are being used, on a platform and by a service provider over which Plaintiff has no control or input. Given the breadth of the Copyrighted Content stolen, the nature of the services offered, i.e., the ability to customize content for publication, and the associated use of Plaintiff's Marks on Defendants' websites and platforms, there can be no doubt that customers will presume, to Plaintiff's detriment, that Plaintiff has endorsed or authorized Defendants' services or platforms.

49. Moreover, as a result of Defendants' actions, digital copies of Plaintiff's copyrighted textbooks have been distributed without authorization, without payment, and without any way to prevent their viral downstream dissemination, causing Plaintiff significant harm.

50. In addition, Defendants' reproduction and distribution of Plaintiff's valuable Copyrighted Content and use of Plaintiff's Marks has taken place without authorization from Plaintiff's authors and others in the legitimate chain of commerce. On the contrary, Defendants' actions described herein benefit Defendants alone, for their sole commercial purpose and gain.

51. Defendants' conduct has caused Plaintiff to suffer an amount of damages to be determined and has deprived and/or threatens to deprive Plaintiff of customers, business goodwill, and reputation.

52. Plaintiff continues to suffer such actual and threatened losses and imminent

irreparable harm from Defendants' acts. The wrongful conduct continues to this day and presents a threat of immediate and irreparable harm to Plaintiff, including, but not limited to, ongoing distribution of Plaintiff's Copyrighted Content, including the Authentic Works, and use of Plaintiff's Marks to sell Defendants' software platform to others, including Plaintiff's competitors.

**FIRST CLAIM FOR RELIEF**
**Copyright Infringement Under 17 U.S.C. §§ 101, *et seq.***

53. Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

54. Plaintiff's Copyrighted Content, including the Authentic Works, constitute original works and copyrightable subject matter pursuant to the Copyright Act, and have been duly registered by Plaintiff with the United States Copyright Office and published by Plaintiff in strict conformity with the Copyright Act and all laws governing copyrights.

55. At all relevant times, Plaintiff has been and still is the owner, or exclusive licensee, of all rights, title, and interest in and to its copyrights in Plaintiff's Copyrighted Content, including the Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

56. Defendants, without Plaintiff's permission or consent, have reproduced and distributed to the public unauthorized copies of Plaintiff's Copyrighted Content, including the Authentic Works listed in Exhibit A hereto. Such reproduction and distribution of Plaintiff's Copyrighted Content, including the Authentic Works, constitutes infringement of Plaintiff's exclusive rights under copyright pursuant to 17 U.S.C. § 501 in violation of 17 U.S.C. §§ 106(1) and 106(3). In addition, Defendants, without Plaintiff's permission or consent, have knowingly encouraged, induced, materially contributed to, and/or facilitated the unauthorized reproduction

and distribution of Plaintiff's Copyrighted Content, including the Authentic Works listed in Exhibit A hereto, and have the right and ability to stop or limit the infringement and a direct financial interest in such infringing activities. Defendants are therefore directly and secondarily liable for infringement under the Copyright Act.

57. Each of the Defendants directly and individually performed the acts alleged herein, and also did so jointly and in concert with one another, or as an agent, principal, alter ego, employee, or representative of the other. Accordingly, each of the Defendants are liable for all of the acts alleged herein because they were the cause in fact and proximate cause of all injuries Plaintiff has suffered.

58. The infringement of each of Plaintiff's copyrights, including each of its Authentic Works, constitutes a separate and distinct act of infringement.

59. Defendants' unlawful conduct, as set forth above, was willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's rights.

60. As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiff has been, and will continue to be, irreparably damaged, for which Plaintiff has no remedy at law. Unless this Court restrains Defendants from continuing to infringe Plaintiff's copyrights, these injuries will continue to occur in the future.

## SECOND CLAIM FOR RELIEF
### Infringement of Federally Registered Trademarks Under 15 U.S.C. § 1114

61. Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

62. This claim, arising under Section 32 of the Lanham Act, 15 U.S.C. § 1114, is for infringement of trademarks registered to Plaintiff in the United States Patent and Trademark Office.

63. Without Plaintiff's authorization, Defendants are marketing, offering for sale, and selling in commerce their custom publishing products and services using Plaintiff's Marks.

64. Defendants' aforesaid use of Plaintiff's Marks have caused and are likely to continue to cause confusion, mistake, and deception as to the source or origin of Defendants' goods and services, in that the public, and others, are likely to believe that Defendants' goods and services are provided by, sponsored by, approved by, licensed by, affiliated with, or in some other way legitimately connected with Plaintiff, all to Plaintiff's irreparable harm.

65. Defendants will continue to use Plaintiff's Marks unless enjoined.

66. Defendants, by their above-enumerated acts, willfully and knowingly have violated and infringed Plaintiff's rights in and to its federally registered Marks, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Defendants threaten to further violate and infringe Plaintiff's said rights.

67. Plaintiff is entitled to an order restraining and permanently enjoining Defendants from further use of Plaintiff's Marks under 15 U.S.C. § 1116(a).

68. Defendant's aforesaid conduct was intentional, or deliberately reckless, and without foundation in law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A. Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

B. An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct;

C. An order requiring Defendants to pay Plaintiff such damages as Plaintiff has sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiff's election, pursuant to 17 U.S.C. § 504;

D. An order preliminarily and permanently enjoining Nadolinski and NadLab, their officers, agents, servants, employees, attorneys, all parent and subsidiary corporations and affiliates, assigns and successors in interest, and those persons acting in concert or participation with any of them, from further infringing upon Plaintiff's copyrights pursuant to 17 U.S.C. § 502;

E. An order preliminarily and permanently enjoining Nadolinski and NadLab, their officers, agents, servants, employees, attorneys, all parent and subsidiary corporations and affiliates, assigns and successors in interest, and those persons acting in concert or participation with any of them, from further infringing upon Plaintiff's trademarks pursuant to 15 U.S.C. § 1116;

F. An order requiring Defendants to pay Plaintiff such damages as Plaintiff has sustained as a consequence of Defendants' unlawful use of its trademarks, as alleged above, including statutory damages or treble damages, pursuant to 15 U.S.C. § 1117;

G. An order requiring Defendants to deliver up for destruction all property necessary to prevent the further propagation or dissemination of Plaintiff's Copyrighted Content, including but not limited to the Authentic Works and any software, code, or other digital or printed material of any kind containing Plaintiff's Copyrighted Content or Plaintiff's Marks.

H. Pre- and post-judgment interest at the applicable rate;

I. Punitive damages;

J. Plaintiff's attorney's fees, expenses, and costs of suit; and

K. Such other and further relief the Court deems proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all of the claims so triable.

Dated: July 25, 2016
Washington, D.C.

Respectfully submitted,

*/s/ Kerry M. Mustico*

Matthew J. Oppenheim
Kerry M. Mustico (Mass. Bar No. 654600)
OPPENHEIM + ZEBRAK, LLP
5225 Wisconsin Avenue NW, Suite 503
Washington, DC 20015
Tel: (202) 480-2999
matt@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiff Pearson Education, Inc.*